WALTER S. WATSON ET AL. v. EDWARD ARDEN NOBLETT.

Submitted July 5, 1900—Decided November 12, 1900.

1. After a general appearance to an attachment issued under the act of March 10th, 1893 (*Gen Stat., p.* 2601), authorizing such a writ in cases of fraud, the writ will not be quashed because of insufficiency of the proof to support the order for it.
2. After such a general appearance no *alias* writ can issue.

On *certiorari.*

On November 25th, 1899, a writ of attachment was ordered and issued out of Essex County Circuit Court, under the act

of March 10th, 1893 (*Gen. Stat., p.* 2601), authorizing such
a writ in cases of fraud.   The writ was returnable December
9th, 1899, and was duly executed on goods and lands and
duly returned.   On December 9th, 1899, the defendant en-
tered his general appearance in the action and served notice
thereof.   On December 9th, 1899, the plaintiff issued an
*alias* writ, which was executed on other goods of the de-
fendant.   On January 6th, 1900, the defendant gave notice
of motions to quash the respective writs, and, after hearing,
the Circuit Court, on March 8th, 1900, made an order re-
citing that the affidavit on which the order for an attachment
was based was not sufficient to warrant it, and ordering
that "the writ of attachment issued in the above cause" be
quashed.   The present *certiorari* removes that order.

Before Justices DIXON, GARRISON and COLLINS.

For the plaintiffs, *McEwan & McEwan.*

For the defendant, *Edwin B. Williamson.*

The opinion of the court was delivered by

COLLINS, J.   The plaintiffs challenge the propriety of the
inquiry that was determined against them.   They urge, and
we think rightly, that after the general appearance entered
in their suit no motion to quash the writ that formed its
foundation should have been entertained.   The learned judge
who decided otherwise did so because the act of 1893 did not,
in terms, authorize an appearance; but no such express
authority was needed.   The writ of attachment was a very
ancient judicial process designed to coerce an appearance on
pain of eventual outlawry.   Normally it followed the sum-
mons, in default of appearance, but in some cases might be
issued without previous resort to that writ.   3 *Bl. Com.* 280.
By "An act to regulate the practice of courts of the law,"
passed February 14th, 1799 (*Pat. L., p.* 355), it was enacted
that the first process in personal actions where the plaintiff
is not entitled to bail should be a summons, and where the

plaintiff is entitled to bail a *capias ad respondendum,* and it was further enacted that on return of the summons served the defendant should be considered as being in court. Thus the common law writ of attachment became obsolete. For ordinary cases the provisions of the Practice act have been substantially continued. *Gen. Stat., p.* 2541, § 49. The act of March 10th, 1893 (*Gen. Stat., p.* 2601), revives the common law attachment, and makes it the first process in actions of contract in cases of fraud. The attachment against absconding or absent debtors given by the act of March 8th, 1798 (*Pat. L., p.* 296), still subsisting in revised form (*Gen. Stat., p.* 97), is a different writ adapted from local procedure peculiar to the city of London. Originally our act authorizing it limited the right of the defendant to appear by requiring from him a bond, on the approval of which the writ was set aside; but, by a supplement of 1871, now section 38 of the revised act, appearance without bond is permitted and the lien of the writ remains. The misconception of the court below in the present case was that because the express permission given in the one act is lacking in the other it is therefore non-existent. A removal of a limitation has been wrongly taken to imply a necessity of affirmative enactment.

It is clear that the attachment authorized by the act of 1893 is a common law writ with the usual common law incidents. The act is entitled "An act to regulate the practice of courts of law." It is enacted in the third section that the issuing of the writ of attachment authorized "shall be deemed the beginning of an action of law, and that no summons or other *mesne* process shall be necessary to bring the defendant into court, and that the plaintiff shall file his declaration within thirty days after the return day of said writ, and shall rule the defendant or defendants to plead thereto, which rule shall be served or published, as the court may direct, and that the practice and procedure in the action shall be the same as if the action had been begun by summons, except as herein otherwise provided;" and, in section 4, that the property attached shall remain as security for any judgment that may be recovered, and that special execu-

tion shall issue against such property. Undoubtedly, upon a general appearance, the same result ensues as when such appearance is entered upon a summons, and the judgment and execution will then be general. When the limitation on appearance to writs of attachment issued against absconding or absent debtors was removed by the supplement above cited it was thereby enacted that, after appearance and notice, the suit of the plaintiff and applying creditors should "pro-·ceed in all respects as if commenced by summons," a declaration equivalent to that above quoted from the act of 1893. In *Davis* v. *Megroz,* 26 *Vroom* 427, 435, this court adjudged that the form and effect of a general appearance by an absconding or absent debtor would be governed by the rules of practice and procedure applicable to suits commenced by summons. Such must clearly be the case as to appearances to writs issued under the act of 1893.

A general appearance waives irregularities and defects of form and service of process. It remains to consider if it waives insufficiency of the proof to support an attachment issued under the act of 1893, namely, the proof that would be required in order to authorize a *capias ad respondendum* in actions of contract. In *Logan* v. *Lawshe,* 33 *Vroom* 567, this court passed, without deciding, the question of the right to challenge the sufficiency of the affidavit on which a *capias* had been ordered and issued, where the motion to quash was made after the defendant had appeared and filed special bail; but it certainly has never been supposed that such right exists. The enactment that the filing of special bail shall be no waiver of the right to apply for an order to take testimony concerning the truth of the affidavits upon which the order for bail was made (*Gen. Stat.,* p. 2545, § 65) would seem to imply that all defects on the face of the affidavits were waived.

As to attachments, it has been directly held that after a general appearance in a suit against an absent debtor it is too late to move to quash the suit for insufficiency of the affidavit on which it was issued. *Connelly* v. *Lerche,* 27 *Vroom* 95. By analogy that precedent rules the present case.

It was not competent, therefore, for the defendant to move to quash the original attachment against him, and the order to quash it must be set aside. That order does not, in terms, quash the *alias* writ, but such, of course, was its effect. To that extent the defendant was entitled to relief. The act of 1893 authorizes but one writ. The plaintiff must file his declaration within thirty days after its return, and rule the defendant to plead. There would be manifest incongruity in permitting a new writ, in the same suit, after declaration and rule, or after the expiring of the limit of time to declare, and there is no warrant to imply a legislative intent to permit a new writ if issued sooner than that. Such intention, to be effective, would have to be expressed.

Looking again at the analogy of the act authorizing attachments against absconding or absent debtors, we find the practice settled against, in any way, reaching unattached property of the debtor after a general appearance duly noticed. There cannot be two writs extant between the same parties in the same county. *Harris* v. *Linnard,* 4 *Halst.* 58; *Duffin* v. *Wolf,* 1 *Zab.* 475. But provision is made for reaching property not attached and property acquired after the attachment. Naturally we look for judicial determination of the effect of a general appearance and notice upon these provisions. Section 46, in language that is unlimited, gives the auditor authority to seek and recover such property; yet in *Jackson* v. *Johnson,* 22 *Vroom* 457, 461, this court held that a general appearance and notice terminate the auditor's rights in that respect. Mr. Justice Magie, speaking for this court, uses this language: "The express declaration that the suit shall proceed as if commenced by summons and that the lien acquired should be continued leaves no room for inference that a lien could be afterward acquired on property discovered under the inquiry permitted by section 46." Similarly the declaration of the act of 1893, that the practice and procedure in the action shall be the same as if the action had been begun by summons, except as therein otherwise provided, and that the property attached should remain during the pendency of the suit as security for any judgment the plaint-

iff may ultimately recover, leaves no room for inference that · property not attached may be reached by an *alias* writ.

Let the order under review be reversed, with costs, and let the record be remitted to the Circuit Court for the entry there of an order quashing only the *alias* attachment.